IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| SANDRA J. ROBERTS, | ) | CV. NO. 07-00391 DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY AND COUNTY OF | ) | |
| HONOLULU, a Municipal | ) | |
| Corporation; GARRETT Y. | ) | |
| OGAWA; WAYNE K. OSHIRO; | ) | |
| CHARLES WOODWARD; | ) | |
| LAVERNE HIGA; JEFF COELHO; | ) | |
| MUFI HANNEMANN; JOHN | ) | |
| DOES 1-10; JANE DOES 1-10; | ) | |
| Individually, and as Employees of | ) | |
| the Department of THE CITY AND | ) | |
| COUNTY OF HONOLULU; DOE | ) | |
| PARTNERSHIPS 1-10; DOE | ) | |
| CORPORATIONS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS CITY AND COUNTY OF HONOLULU, GARRETT Y.
OGAWA, WAYNE K. OSHIRO, CHARLES WOODWARD, LAVERNE HIGA,
JEFF COELHO, AND MUFI HANNEMANN'S MOTION TO DISMISS

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for

disposition without a hearing.  After reviewing Defendants' motion and the

supporting and opposing memoranda, the Court GRANTS IN PART AND

DENIES IN PART Defendants' Motion to Dismiss.  (Doc. # 30.)  Plaintiff's 42

U.S.C. §§ 1983 and 1985 claims and her intentional interference with economic relations claim, assuming she brought one, are dismissed based on the statute of limitations.  Plaintiff's defamation claim remains.  Plaintiff's claim for punitive damages against the City and County is dismissed.

## BACKGROUND

According to the Complaint and a decision from the Ninth Circuit in a related case, Plaintiff was employed by the Los Angeles office of the U.S. Census Bureau.  See Roberts v. Dep't of Commerce, No. 2006-3356, 2007 WL 648184, at *1 (9th Cir. March 5, 2007).[1]  Plaintiff visited the Honolulu Municipal Building on August 16, 2004, on a job-related errand.  The security guard asked Plaintiff for identification.  Plaintiff showed the guard her federal credential and signed in on the log.  The security guard informed Plaintiff that she needed to leave her credential with him and he would give her a visitor pass.  Plaintiff asked to speak to a supervisor to find out what County ordinance required that she leave her government-issued identification as a condition of entering the municipal building.

---

[1] Although this case is an unpublished decision, unpublished dispositions issued on or after January 1, 2007, may be cited to the courts of the Ninth Circuit in accordance with Fed. R. App. P. 32.1, which states that a party who cites an unpublished order that is not publically available in an electronic database must provide a copy of the order.  The case cited above was issued after January 2007, and is available in an electronic database.

2

The supervisor could not identify the County ordinance.  She asked to speak with another supervisor and then called the Honolulu Police Department.

The U.S. Census Bureau terminated Plaintiff's employment effective April 1, 2005.  One reason for her termination was the "event where Ms. Roberts refused to adhere to building security requirements, leading to the agency's charge of "conduct unbecoming of a federal employee."  Roberts, 2007 WL 648184 at *2.  Plaintiff appealed her termination to the Merit Systems Protections Board (the "Board").

On July 20, 2005, Garret Ogawa, a supervisor, signed a declaration that was filed with the U.S. Merit Systems Protection Board.  In the declaration, Mr. Ogawa states that Plaintiff came to the building on August 9, 2004, that she was asked to surrender her identification in exchange for a visitor pass.  She refused to comply with the policy.  Mr. Ogawa explained the security policy to Plaintiff.  She refused to follow the policy and "began to rant and rave and became irate.  She proceeded to call the Police Department and I overheard the Police Department tell her that she needed to comply with the building security policy or she will not be provided access. . . . At this time, Ms. Roberts accused me of preventing her from performing her federal job assignment by not granting her access."  (Compl. ¶ 14.)  Mr. Ogawa further stated that based on the City and

County's workplace violence policy, Ms. Roberts could be denied access to the building. She "displayed an arrogant attitude and complete lack of professionalism on that date." (Id. ¶ 15.)

Mr. Ogawa stated that he felt compelled to notify the Census Bureau of Plaintiff's conduct. Ogawa first called the Census Bureau, and then using Wayne Oshiro's email (since Ogawa's email was not operational), on or about August 19, 2004, Ogawa sent and email to the Census Bureau. Ogawa informed the Census Bureau that based on the City and County's workplace violence policy and her conduct, Plaintiff could be denied access to the building. He stated that at a minimum, she needed to be counseled. Ogawa further stated that she displayed an arrogant attitude and lack of professionalism. He stated that she began ranting and raving and acting in an appalling manner, which was far beyond rude. He stated that she should be placed into a workplace violence program and taught etiquette and that she was creating a bad image of her employer.

The Board found that Ms. Roberts "acted unprofessionally when she refused to follow the procedure required by the security personnel, and that [her] confrontation with the security guard was improper and unsuitable for a federal employee." Roberts, 2007 WL 648184 at *2. Plaintiff at that time, and even now, does not dispute that she refused to follow the request that she surrender a

4

government issued identification in order to obtain a pass to enter the building.  Id.
Plaintiff states only that she was concerned about surrendering it because there
were digital cameras at the security station.  Plaintiff has, however, stated that the
incident was devoid of conflict, and did not constitute behavior unbecoming of a
federal employee.  In her Complaint, Plaintiff contends that her conduct did not
rise to the level of workplace violence, as implied in Ogawa's declaration.
Plaintiff further claims that many of the statements made by Ogawa were false.
The Board found that her conduct indicated that she could not be relied upon to act
in a professional manner and protect her employer's image.  The Ninth Circuit
sustained the Board's findings and concluded that they were supported by
substantial evidence.  Id.

Plaintiff, pro se, filed a Complaint in this Court on July 24, 2007,
alleging that Ogawa's declaration and email were defamatory.  Plaintiff also
alleges that the declaration and email were in retaliation for her questioning the
authority for the building's security procedures.  Plaintiff claims that these
publications caused her to lose her appeal of the Board's affirmance of her removal
from employment.  Plaintiff asserts that these actions caused a loss of employment
and damage to her reputation, in addition to emotional distress and physical pain.
Plaintiff asserts that there are no written security policies in place, and that by

5

requesting a citation to the authority, Defendants viewed her as a whistleblower.

Plaintiff alleges that the City and County failed to adequately train Ogawa and

Oshiro.  Plaintiff also claims that her First Amendment rights and Fourteenth

Amendment due process rights were violated.  Plaintiff alleges violations of the

First and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, a conspiracy

claim pursuant to 42 U.S.C. § 1985, and state law claims of defamation and

possibly intentional interference with economic advantage.

Defendants filed the instant motion, seeking to dismiss all of

Plaintiff's claims, on December 14, 2007.  (Doc. # 30.)  Plaintiff filed an

opposition on February 1, 2008, and Defendants filed a reply on February 7, 2008.[2]

## STANDARD OF REVIEW

Pursuant to the Federal Rules of Civil Procedure ("Fed. R. Civ. P.")

12(b)(6), a motion to dismiss will be granted where the plaintiff fails to state a

claim upon which relief can be granted.  Review is limited to the contents of the

complaint.  See Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir.

1994).  Allegations of fact in the complaint must be taken as true and construed in

---

[2]Defendants argue that this Court should not consider Plaintiff's opposition because it was filed one day late.  As Plaintiff is pro se, and as Defendants were not prejudiced by this one day late filing due to the motion being taken off for hearing, this Court has reviewed and considered Plaintiff's opposition.

the light most favorable to the plaintiff.  See Livid Holdings Ltd. v. Salomon Smith

Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005).  A complaint need not include

detailed facts to survive a Rule 12(b)(6) motion to dismiss.  See Bell Atl. Corp. v.

Twombly, 127 S. Ct. 1955, 1965 (2007).   In providing grounds for relief,

however, a plaintiff must do more than recite the formulaic elements of a cause of

action.  See id. at 1966.  A plaintiff must include enough facts to raise a reasonable

expectation that discovery will reveal evidence.  In other words, a plaintiff must

allege enough facts to state a claim for relief that is plausible on its face.  See id. at

1974.  "[C]onclusory allegations without more are insufficient to defeat a motion

to dismiss for failure to state a claim."  McGlinchy v. Shell Chem. Co., 845 F.2d

802, 810 (9th Cir. 1988).

        When a plaintiff appears pro se, the court has an obligation to

construe the plaintiff's complaint liberally.  See Bernhardt v. Los Angeles County,

339 F.3d 920, 925 (9th Cir. 2003); Jackson v. Carey, 353 F.3d 750, 757 (9th Cir.

2003) (same).  Pro se plaintiffs in a civil rights action must be afforded the benefit

of any doubt.  See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623

(9th Cir. 1988). "A pro se litigant must be given leave to amend his or her

complaint unless it is 'absolutely clear that the deficiencies of the complaint could

not be cured by amendment.'"  Id. (quoting Noll v. Carlson, 809 F.2d 1446, 1448

7

(9th Cir. 1987), superceded by statute, Lopez v. Smith, 203 F.3d 1122, 1126-30

(determining that a district court retains its discretion to dismiss a pro se prisoner's

in forma pauperis complaint with or without leave to amend under the Prisoner's

Litigation Reform Act)).  "[B]efore dismissing a pro se civil rights complaint for

failure to state a claim, the district court must give the plaintiff a statement of the

complaint's deficiencies."  Id.

DISCUSSION

I.    Statute of Limitations

Defendants argue that all of Plaintiff's claims are time-barred.

Under Hawaii law, the defendant bears the burden of proof on its

affirmative defenses based upon limitations statutes.  Strand v. Gen. Elec. Co.,

945 F. Supp. 1334, 1339 (D. Haw. 1996).  Civil rights claims brought pursuant to

42 U.S.C. § 1983 and § 1985 are subject to the two-year statute of limitations.  Pele

Defense Fund v. Paty, 837 P.2d 1247, 1259 (Haw. 1992) ("the two-year statute of

limitations set forth in HRS § 657-7 governs § 1983 actions, rather than the

six-year statute of limitations set forth in HRS § 657-1(4).");  see also Action

Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d 1020, 1026 (9th

Cir. 2007) ("It is well-established that claims brought under § 1983 borrow the

forum state's statute of limitations for personal injury claims"); <u>McDougal v. County of Imperial,</u> 942 F.2d 668, 673-74 (9th Cir. 1991) ("An action under § 1985(3) alleging a conspiracy to deprive a person of constitutional rights is designed to remedy the same types of harms as the deprivations actionable under § 1983. Accordingly, . . . suits under § 1985(3) are also best characterized as personal injury actions and are governed by the same statute of limitations as actions under § 1983.").

The statute of limitations for a state law claim of libel or slander is two years.  Haw. Rev. Stat. § 657-4; <u>Bauernfiend v. Aoao Kihei Beach Condominiums,</u> 54 P.3d 452, 453 (Haw. 2002) ("Defamation actions are governed by HRS § 657-4").  Although Hawaii courts have not specifically addressed the question of whether the two-year statute of limitations or the six-year statute of limitations applies to intentional interference with contract and prospective business relationships claims, Hawaii courts have stated that the two-year statute of limitations generally applies to tort actions, and that intentional interference with contract and prospective business relationships claims are torts.  <u>See Jou v. Nat'l Interstate Ins. Co. of Haw.,</u> 157 P.3d 561, 567 (Haw. App. 2007) (citing Haw. Rev. Stat. § 657-7 and stating that "a two-year statute of limitations generally applies to tort actions in Hawai'i."); <u>see also</u> <u>Kutcher v. Zimmerman,</u> 957 P.2d 1076, 1088

(Haw. App. 1998) (noting that the causes of action for interference with prospective contractual relations and for interference with existing contracts are torts); see also Ingle v. Liberty House, Inc., Civil No. 94-0787(3), 1995 WL 757746, at *7 (Haw. Cir. Ct. Oct. 12, 1995) (although citing to only Haw. Rev. Stat. § 657-4 regarding the statute of limitations for a libel claim, the Hawaii circuit court stated that "the claims of conspiracy and interference [with contract] are barred by the [two-year] statute of limitations.").

Thus, all of Plaintiff's claims are subject to two-year statute of limitations.  The question is when did Plaintiff's claims begin run.

For §§ 1983 and 1985 claims, federal law determines when the cause of action accrues.  Cline v. Brusett, 661 F.2d 108, 110 (9th Cir. 1981) ("While state law determines the period of limitations, federal law determines when a cause of action accrues.") (citation omitted).  "Under federal law, a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action."  Id.

For tort claims in general, such as intentional interference, under Hawaii law, "a tort claim accrues when the plaintiff discovers, or through the use of reasonable diligence should have discovered, the negligent act, the damage, and

10

the causal connection between the two." Assoc. of Apartment Owners of

Newtown Meadows, 167 P.3d at 270.

> [T]he exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party might exist. . . . reasonable diligence is not an absolute standard, but is what is expected from a party who has been given reason to inform himself of the fact upon which his right to recovery is premised.

Id. at 270-71 (citations and internal quotation marks omitted).

Likewise, "a claim for defamation accrues when the defamee

discovers or reasonably should have discovered the publication of the defamation."

Bauernfiend, 54 P.3d at 453 (internal quotations and citation omitted). "[A] new

cause of action arises with each publication." Gonsalves v. Nissan Motor Corp. in

Haw., Ltd., 58 P.3d 1196, 1219 (Haw. 2002).

Here, it is undisputed that Plaintiff was informed, at least as of the

effective date of her removal from employment on April 1, 2005, that one of the

bases for her removal from employment was her conduct of refusing to adhere to

security requirements at the Honolulu Municipal Building.  Certainly, to the extent

that Plaintiff has raised an intentional interference claim, she certainly should have

and would have known by April 1, 2005, that some defendants had informed her employer of her alleged conduct of refusing to comply with the security procedures at the Municipal Building.  Therefore, Plaintiff's intentional interference claim began to accrue on April 1, 2005, and expired two years later in April 2007. Plaintiff did not file her Complaint until July 24, 2007.  Accordingly, her interference claim is time-barred.

Likewise, by April 1, 2005, Plaintiff knew or should have known of her claimed injuries under sections 1983 and 1985 of lack of due process, and retaliation under the First Amendment, which allegedly led to her injuries of job loss and damaged reputation.  Therefore, Plaintiff's section 1983 and 1985 claims are also time-barred.

With respect to Plaintiff's defamation claim, however, Defendants did not present evidence that Plaintiff knew as of April 1, 2005, that Defendants had made specific statements that implied that she had violated their workplace violence policy, she had been rude, was ranting and raving, and was unprofessional.  Neither did Defendants present evidence from which this Court could determine that Plaintiff should have known that Defendants said more than she refused to comply with their security policy.  Plaintiff asserts that she was not aware of these particular statements until she saw a fax of Ogawa's declaration on

12

or about July 29, 2005.  Plaintiff filed her Complaint within two years of July 29, 2005.

Taking Plaintiff's allegations as true, as this Court must, and with no evidence to the contrary, this Court finds that Plaintiff was not aware of the basis for a defamation claim more than two years prior to filing the instant lawsuit.  This is not to say that Defendants would not be able to prove in a summary judgment motion that Plaintiff's claim is time-barred.  However, based on the record as it stands, Plaintiff's defamation claim is not time-barred.

II.   Defamation Claim

Defendants next argue that Plaintiff's defamation claim fails as a matter of law because she cannot establish any of the necessary elements.

The Hawaii Supreme Court has established the following four elements to sustain a claim for defamation:

> (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher [actual malice where the plaintiff is a public figure]; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.

Gonsalves, 58 P.3d at 1218.

A.    <u>False and Defamatory Statement</u>

Defendant first argues that Ogawa's email and declaration are not defamatory since he was merely truthfully reporting Plaintiff's conduct.  "A communication is defamatory when it tends to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him."  <u>Fernandes v. Tenbruggencate,</u>, 649 P.2d 1144, 1147 (Haw. 1982) (citation and internal quotation marks omitted).

Defendant focuses only on the fact that Plaintiff has not denied refusing to follow the security procedures.  However, there is a factual dispute as to whether Plaintiff was ranting and raving, acting in an unprofessional manner, and engaged in conduct that amounted to a violation of the City and County's workplace violence policy.  Taking Plaintiff's allegations that she did not engage in such conduct as true, then a statement that she did engage in such conduct would be false.  Furthermore, a communication to a person's employer which implies that a person's conduct violated a workplace violence policy and was unprofessional is capable of causing harm to that person's reputation.  Indeed, such words may constitute libel per se.  The Hawaii Supreme Court has "held as libelous per se words which impute to one unfitness to perform the duties of his employment or which have a tendency to prejudice him in such employment."  <u>Russell v. Am.</u>

14

Guild of Variety Artists, 497 P.2d 40, 43 (Haw. 1972) (finding that a letter stating

that an entertainer had been committed to a state mental hospital, written in

connection with entertainer's employment, was libelous per se).  Accordingly, there

is a question of fact of whether Ogawa's statements were false and defamatory.

      B.    Qualified Privilege

      Defendant next argues that Ogawa's email to Plaintiff's employer was

subject to a qualified privilege.

      A qualified privilege "arises (1) when the author of a defamatory

statement reasonably acts in the discharge of some public or private duty, legal,

moral, or social and (2) where the publication concerns a subject matter in which

the author and the recipients of the publication have a correlative interest or duty."

Kainz v. Lussier, 667 P.2d 797, 801-02 (Haw. App. 1983) (citations omitted); see

also Russell, 497 P.2d at 44 (a qualified privileged exists "when the author of the

defamatory statement reasonably acts in the discharge of some public or private

duty, legal, moral, or social, and where the publication concerns subject matter in

which the author has an interest and the recipients of the publication a

corresponding interest or duty.") (citation omitted).  Although Defendants must

satisfy both of these requirements to find that a qualified privilege defense is

available, this test "places emphasis on the reasonable action of the author of the

publication and the corresponding interest between the author and the recipient."

Russell, 497 P.2d at 44.

Defendants do not address the first part of this analysis or explain

what public or private duty Ogawa was acting upon.  Hawaii courts have stated

that

> [f]requently in such cases there is a legal, as well as a
> moral obligation to speak.  This is most obvious, of
> course, in the case of those who have entered upon or are
> considering business dealings with one another, or where
> the parties are members of a group with a common
> pecuniary interest, as where officers, agents or employees
> of a business organization communicate with
> stockholders about the affairs of the organization itself[.]

Kainz, 667 P.2d at 802 (citation, internal quotation marks, and ellipses omitted).

Defendants only state that Ogawa felt compelled to notify the U.S. Census Bureau.

Defendants do not provide what policy, law, obligation, or duty, legal, moral or

otherwise, made Ogawa feel compelled or obligated to make this communication

to Plaintiff's employer.  Id. (holding that in "writing and sending the series of

letters to the shareholders, Lussier acted in discharge of his private legal duty as

corporate secretary and director to investigate and report to the shareholders on the

affairs of Mau-Van and the progress of a project Mau-Van was undertaking.").

Likewise, assuming that some of the statements made by Ogawa were false, Ogawa

16

has pointed to no duty that he was discharging in making such allegedly false statements.  See id. ("in allegedly making slanderous statements to third persons, Lussier was not discharging any private or public duty and, thus, did not have a qualified privilege to commit slander.")

Also, Defendants' claim of a common interest is weak.  "An interest which is protected by a qualified privilege is one where (1) the publisher and recipient have a common interest and (2) the communication is of a kind reasonably calculated to protect or further such interest."  Id.  The U.S. Census Bureau certainly had an interest in Plaintiff's conduct while performing her job duties.  As found by the Board, Plaintiff's job involved public contact.  Because Plaintiff was at the municipal building on an errand for her job, her employer had an interest in her conduct while she was there.  Defendants, on the other hand, have no interest in Plaintiff's job performance in general.  Defendants' main interest is in building security.  Defendants claim only that they have a common interest with Plaintiff's employer because they are both governmental employers with interests in their public image and the conduct of governmental employees.  This common interest is minimal at best, and insufficient to determine as a matter of law that Ogawa has a qualified privilege.

17

Moreover, the Hawaii Supreme Court has instructed that "the fact that the publication was solicited must be considered relevant to the reasonableness issue." Russell, 497 P.2d at 45.  Here, Ogawa's statements regarding the incident were not solicited by Plaintiff's employer.

For these reasons, this Court cannot determine as a matter of law that Ogawa was acting reasonably in discharging some public or private duty, or that there was a sufficient common interest between the publisher and recipient.

C.   Fault Amounting to Negligence

Defendants further argue that Plaintiff has not alleged fault amounting to negligence.  This Court disagrees.

Plaintiff has asserted that Ogawa implied that she violated the City and County's workplace violence policy, but has been unable to identify which part of the policy was violated, why it would apply to her as a non-employee, and how she violated it.  Furthermore, Plaintiff disputes that she engaged in the unprofessional and rude behavior described by Ogawa.  This is certainly sufficient to raise a question of fact of whether Ogawa was negligent in making such statements to Plaintiff's employer.

18

D.   Special Harm

Finally, Defendants aver that Plaintiff has not properly alleged special

harm caused by the publication or actionability irrespective of the special harm.

Defendants proceed to argue that they are not her employer and therefore, legally

incapable of committing the tort of wrongful termination.  This argument misses

the point.

> The Hawaii Supreme Court has held that
>
> if the publication in question is libelous per se, the injury
> to the plaintiff will be presumed and special damages
> need not be alleged or proven, but general and punitive
> damages may be recovered. Whereas, if it is not libelous
> per se, the plaintiff must allege and prove special
> damages or his action will fail.

Russell, 497 P.2d at 42 (citation and internal quotation marks omitted).

Here, the alleged false and defamatory statements were made in

writing in an email and a declaration.  Also, the statements were made to Plaintiff's

employer for the purpose of her receiving a counseling, at minimum.  The

statements, in part, led to her termination from employment.  Therefore, Plaintiff

has sufficiently pled special damages and harm irrespective of special damages.

Accordingly, Plaintiff has pled facts sufficient to withstand a motion

to dismiss.

III.   Punitive Damages

Defendants assert that the City and County cannot be held liable for punitive damages.  Defendants have not moved to dismiss a punitive damages claim against the individual defendants.

> [T]he City, as a municipal corporation, should not be held liable for punitive damages. . . . The deterrent or retributive effect of punitive damages must be placed squarely on the shoulders of the wrongdoer.  A wrongdoer in this context includes a person superior in authority who expressly authorizes, ratifies or condones the tortious act of the employee. . . . While the wrongdoing employee is vulnerable to a punitive award, . . . the municipality is not.

Lauer v. Young Men's Christian Ass'n of Honolulu, 557 P.2d 1334, 1342 (Haw. 1976) (citations omitted).

Accordingly, Plaintiff's claim for punitive damages against the City and County is DISMISSED.

CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendants' Motion to Dismiss.  Plaintiff's 42 U.S.C. §§ 1983 and 1985 claims and her intentional interference with economic relations claim, assuming she brought one, are DISMISSED based on the statute of limitations.

Plaintiff's defamation claim remains.  Plaintiff's claim for punitive damages against the City and County is DISMISSED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 3, 2008.

_____
David Alan Ezra
United States District Judge

Roberts v. City and Count of Honolulu, et al., CV No. 07-00391 DAE-KSC;
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS
CITY AND COUNTY OF HONOLULU, GARRETT Y. OGAWA, WAYNE K.
OSHIRO, CHARLES WOODWARD, LAVERNE HIGA, JEFF COELHO, AND
MUFI HANNEMANN'S MOTION TO DISMISS