IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | | |
|---|---|---|
| SANDRA J. ROBERTS, | ) | CV. NO. 07-00391 DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY AND COUNTY OF | ) | |
| HONOLULU, a Municipal | ) | |
| Corporation; GARRETT Y. | ) | |
| OGAWA; WAYNE K. OSHIRO; | ) | |
| CHARLES WOODWARD; | ) | |
| LAVERNE HIGA; JEFF COELHO; | ) | |
| MUFI HANNEMANN; JOHN | ) | |
| DOES 1-10; JANE DOES 1-10; | ) | |
| Individually, and as Employees of | ) | |
| the Department of THE CITY AND | ) | |
| COUNTY OF HONOLULU; DOE | ) | |
| PARTNERSHIPS 1-10; DOE | ) | |
| CORPORATIONS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT GARRETT Y. OGAWA'S
MOTION FOR SUMMARY JUDGMENT; ORDER DENYING AS MOOT
PLAINTIFF'S MOTION FOR A RULE 56(f) CONTINUANCE

On September 2, 2008, the Court heard Defendant Garrett Ogawa's

("Defendant") Motion.  Plaintiff Sandra J. Roberts appeared at the hearing pro se;

Sharon Lam Blanchard and Marie Manuele Gavigan, Deputies Corporation

Counsel, appeared at the hearing on behalf of Defendant.  Immediately prior to the

hearing, Plaintiff filed three motions: (1) Motion to Compel Production of Ethics Files, (2) Motion to Compel Production of Cellular Phone Records, and (3) Motion to Compel Production of DARTS-Related Emails (the "motions to compel").  In light of Plaintiff's pro se status, the Court construes these motions to compel as a single motion for a Rule 56(f) continuance ("Motion for Continuance").

After reviewing the motions and the supporting and opposing memoranda, the Court GRANTS Defendant's Motion for Summary Judgment and DENIES AS MOOT Plaintiff's Motion for Continuance.

<u>BACKGROUND</u>

On August 9, 2004, while employed by the Los Angeles regional office of the U.S. Census Bureau of the Department of Commerce (the "Agency") as a Field Representative, Plaintiff visited the Honolulu Municipal Building ("HMB") on a job-related errand.  Pursuant to HMB policy, the security guard asked Plaintiff for identification.  Plaintiff showed the guard her federal credential but refused his request that she leave her identification in order to gain access to HMB.  Plaintiff asked to speak to a supervisor.

Defendant, a Security Supervisor with the Department of Facility Management for the City and County of Honolulu ("CCH"), was notified of Plaintiff's refusal to leave her identification.  Defendant instructed the security

guard to escort Plaintiff while she was in the building.  Shortly thereafter, Defendant received another call from the security guard indicating that Plaintiff refused his escort.  The security guard requested Defendant's presence to explain the relevant policy to Plaintiff.

Defendant met with the security guard and Plaintiff, at which point Plaintiff again refused an escort.  Defendant explained HMB's entrance policy, its underlying rationale, and informed Plaintiff that she would need to be escorted if she refused to leave an identification.  Plaintiff stated that she was a government agent, did not have to be treated in such a manner, and informed Defendant that she intended to call the Honolulu Police Department ("HPD").

Plaintiff called HPD.  During this call Plaintiff became visibly agitated.  When the call concluded, Plaintiff loudly reiterated to Defendant that she did not want an escort and would not leave her identification.  Defendant again informed Plaintiff that she needed to comply with HMB's security procedures. Plaintiff continued to voice her frustrations and eventually left HMB.

Shortly after this incident, Defendant contacted Jeffrey C. Enos with the Agency and informed him of Plaintiff's conduct, which Defendant considered unbecoming of a federal employee.  Enos requested that Defendant write an email describing the events that had transpired with Plaintiff at HMB.

3

On August 19, 2004, Defendant emailed Enos as requested (the "August 19, 2004 email").[1]  The August 19, 2004 email stated, among other things, that Plaintiff refused to comply with HMB entry policy; Defendant explained the policy and its rationale to Plaintiff; Plaintiff became irate, ranted and raved, and called HPD; and Plaintiff accused Defendant of not allowing her to perform her job duties.  Defendant also indicated that he thought Plaintiff's behavior was inappropriate and that Plaintiff should be forced to attend relevant training.

On October 29, 2004, Julie Lam Ly, Program Coordinator with the Agency, sent a Proposed Removal Letter to Plaintiff, which was premised on the following charges: (1) failure to follow supervisory directives; (2) failure to follow standard interview procedures; (3) failure to meet the Agency's required weekly transmittal rates over a three-month period; and (4) conduct unbecoming a federal employee arising from Plaintiff's behavior at HMB in August 2004.  The Proposed Removal Letter included specific references and quotations from the August 19, 2004 email.  Plaintiff was served with the letter in December 2004.

On December 20, 2004, Ly received an email from Plaintiff in which Plaintiff requested, among other things, a copy of the August 19, 2004 email

---

[1] As Defendant's work station was not operational, he sent the email from co-worker Wayne Oshiro's account.

referenced in the Proposed Removal Letter.  On December 27, 2004, Ly sent a

letter responding to Plaintiff's email and included a redacted copy of the August

19, 2004 email.[2]  On February 2, 2005, Ly sent another letter to Plaintiff regarding

the documentation the Agency relied upon for purposes of the Proposed Removal

Letter.  Ly again included a copy of the August 19, 2004 email.[3]

On March 21, 2005, Carol Ann Harris (formerly known as Carol Ann

Shaw), Assistant Regional Director of the Agency's Los Angeles regional office,

sent a letter to Plaintiff setting forth the reasons sustaining the Agency's decision

to remove Plaintiff from her position as Field Representative effective April 1,

2005.  The March 21, 2005 letter notified Plaintiff that she was being removed for

the reasons set forth in the Proposed Removal Letter.

On April 29, 2005, Plaintiff appealed her removal to the U.S. Merit

Systems Protection Board (the "Board").  On June 21, 2005, the Agency filed a

request that the Board issue a subpoena for Defendant to testify at the appeal

hearing scheduled for August 4 and 5, 2005.  The Agency planned to call

---

[2] The sender's name was redacted from the email.

[3] This second copy of Defendant's email was not redacted and indicated that the sender was Wayne Oshiro.

Defendant as a witness to testify as to charge four from the Proposed Removal

Letter (Conduct Unbecoming a Federal Employee).

On June 27, 2005, the Board issued a subpoena to Defendant.  On July

11, 2005, the Board denied Plaintiff's request to quash the subpoena.  On July 14,

2005, the Agency served Defendant with the subpoena via certified mail.

That same day, Plaintiff withdrew her request for a hearing on her

appeal.  Plaintiff later confirmed the withdrawal by way of letter.  On July 15,

2005, the Board granted Plaintiff's request and cancelled the hearing.  As a result

of these events, the administrative judge decided the matter based solely on the

written record.

On July 20, 2005, Defendant signed a declaration, which was

subsequently filed with the Board, recounting the events at HMB and the steps he

took to notify the Agency of Plaintiff's behavior (the "July 20, 2005 declaration").

Attached to both the July 20, 2005 declaration and a declaration filed by Enos were

copies of the August 19, 2004 email.[4]

On August 26, 2005, the Board affirmed the Agency's decision to

remove Plaintiff from federal service based on her failure to follow supervisory

---

[4] Both copies of the email were not redacted, indicating that Oshiro was the
sender.

directives, failure to meet the agency's required weekly transmittal rates, and

conduct unbecoming a federal employee based on the incident at HMB.  With

regard to the last charge, the Board found that Plaintiff "acted unprofessionally

when she refused to follow the procedure required by the security personnel, and

that [her] confrontation with the security guard was improper and unsuitable for a

federal employee."  Roberts v. Dep't of Commerce, No. 2006-3356, 2007 WL

648184, at *2 (9th Cir. March 5, 2007).[5]  The Board further found that Plaintiff's

conduct indicated that she could not be relied upon to act in a professional manner

and protect the Agency's image.  Id.

On September 30, 2005, Plaintiff filed a Petition for Review asking

the Board to reconsider its August 26, 2005 decision.  On June 21, 2006, the Board

denied Plaintiff's Petition for Review, concluding that there was no new,

previously unavailable evidence and that the administrative judge had made no

error in law or in regulation that affected the outcome.  Plaintiff then filed an

appeal with the Ninth Circuit, which sustained the Board's findings and concluded

---

[5]Although this case is an unpublished decision, unpublished dispositions issued on or after January 1, 2007 may be cited to the courts of the Ninth Circuit in accordance with Fed. R. App. P. 32.1, which states that a party who cites an unpublished order that is not publically available in an electronic database must provide a copy of the order.  The case cited above was issued after January 2007, and is available in an electronic database.

that: (1) the criteria for removal were met; (2) the Agency established that the charged conduct had occurred; (3) there is a nexus between the charged conduct and the efficiency of the service; and (4) the penalty was appropriate under the circumstances.  Id.  Furthermore, the Ninth Circuit found that Plaintiff had not shown that the Board's decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law.  Id.

Plaintiff, pro se, filed a Complaint in this Court on July 24, 2007, alleging violations of the First and Fourteenth Amendments, pursuant to 42 U.S.C. § 1983, a conspiracy claim pursuant to 42 U.S.C. § 1985, and state law claims of defamation and possibly intentional interference with economic advantage.  On December 14, 2007, Defendants filed a motion to dismiss Plaintiff's Complaint, which this Court granted in part and denied in part on March 3, 2008 (the "March 3, 2008 Order").

On July 9, 2008, Defendant filed the instant motion for summary judgment (Doc. # 46), which Plaintiff opposed on August 14, 2008 (Doc. # 51). On August 22, 2008, Defendant filed a reply (Doc. # 52).

<u>STANDARD OF REVIEW</u>

Rule 56 requires summary judgment to be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000). A main purpose of summary judgment is to dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial. See id. at 323. A moving party without the ultimate burden of persuasion at trial has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden initially falls upon the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings. Porter,

419 F.3d at 891 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  <u>S. Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  <u>T.W. Elec. Serv.</u>, 809 F.2d at 630  (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."  <u>Addisu</u>, 198 F.3d at 1134.

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  <u>T.W. Elec. Serv.</u>, 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  <u>Porter</u>, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  <u>Id.</u>  However,

inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

When a plaintiff appears pro se, the court has an obligation to construe the plaintiff's complaint liberally.  See Bernhardt v. Los Angeles County, 339 F.3d 920, 925 (9th Cir. 2003); Jackson v. Carey, 353 F.3d 750, 757 (9th Cir. 2003) (same).  Pro se plaintiffs in a civil rights action must be afforded the benefit of any doubt.  See Karim-Panahi v. Los Angeles Police Dept., 839 F.2d 621, 623 (9th Cir. 1988).  "A pro se litigant must be given leave to amend his or her complaint unless it is 'absolutely clear that the deficiencies of the complaint could not be cured by amendment.'"  Id. (quoting Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987), superceded by statute, Lopez v. Smith, 203 F.3d 1122, 1126-30 (determining that a district court retains its discretion to dismiss a pro se prisoner's in forma pauperis complaint with or without leave to amend under the Prisoner's Litigation Reform Act)).  However, "[p]ro se litigants must follow the same rules of procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

## DISCUSSION

### I. Defendant's Motion for Summary Judgment

Defendant avers that Plaintiff's defamation claim against him as to the August 19, 2004 email is barred by the statute of limitations. Similarly, Defendant asserts that Plaintiff's defamation claim as to the July 20, 2005 declaration is barred by the absolute litigation privilege. Finally, Defendant contends that Plaintiff is not entitled to punitive damages against him because he acted at all times without malice. The Court addresses each of these arguments in turn.

#### A. Statute of Limitations

Defendant argues that the statute of limitations bars Plaintiff's defamation claim because Plaintiff was informed that one of the bases for her removal from employment was her conduct during the August 2004 incident at HMB. As this knowledge was gained more than two years before the filing of the instant suit, Plaintiff's defamation claim is untimely. The Court agrees.[6]

---

[6] In the March 3, 2008 Order, the Court found that Defendants did not provide evidence establishing that Plaintiff was aware of the basis for a defamation claim more than two years before the filing of the instant suit. (See March 3, 2008 Order at 13.) Taking the allegations in the Complaint as true and without direct evidence to the contrary, the Court denied the motion to dismiss as to the defamation claim. The Court noted, however, that "[t]his is not to say that Defendants would not be able to prove in a summary judgment motion that Plaintiff's [defamation] claim is time-barred." (Id.)

In Hawai`i, the statute of limitations for a claim of libel or slander is two years.  Haw. Rev. Stat. § 657-4; <u>see</u> <u>also</u> <u>Bauernfiend v. AOAO Kihei Beach Condominiums</u>, 54 P.3d 452, 453 n. 4 (Haw. 2002) ("Defamation actions are governed by HRS § 657-4.")   "[A] claim for defamation accrues when the defamee discovers or reasonably should have discovered the publication of the defamation."  <u>Bauernfiend</u>, 54 P.3d at 453 (internal quotations and citation omitted).  "[A] new cause of action arises with each publication." <u>Gonsalves v. Nissan Motor Corp. in Haw., Ltd.</u>, 58 P.3d 1196, 1219 (Haw. 2002).

Here, Defendant provides probative evidence that Plaintiff was aware of Defendant's allegations regarding her behavior at HMB as early as December 27, 2004.  Specifically, in response to Plaintiff's request for "a copy of the security guard's emailed complaint" following her receipt of the Proposed Removal Letter, Ly provided Plaintiff with a redacted copy of the August 19, 2004 email on December 27, 2004.  (Declaration of Julie Lam Ly, Ex. C at 3, attached to Def.'s Mot. for Summ. Judg. ("MSJ").)  Following another request for documentation from Plaintiff, Ly sent an additional copy of the August 19, 2004 email on February 2, 2005.  (<u>Id.</u>)

Based on this evidence, which Plaintiff does not rebut with contrary facts, it is clear that Plaintiff discovered the publication of the alleged defamatory

material by late 2004.  Plaintiff's receipt of two copies of the August 19, 2004

email establish that she knew that a person who witnessed the incident at HMB had

written an email to her superiors at the Agency claiming that Plaintiff: (1) refused

to comply with HMB's policy; (2) became irate and ranted and raved; (3) was

arrogant and unprofessional; and (4) projected a negative image for her employer.

(See August 19, 2004 email, Ex. D at 3, attached to Def.'s MSJ.)  In short, Plaintiff

was aware that the alleged defamatory statements had been made, that the

statement was made to someone at the Agency, and the specific content of the

statement.

Plaintiff's contention that she was not aware of the specific identity of

the writer of the email until July 29, 2005, and, as a result, her claim is not time

barred, is meritless.  As stated above, a claim for defamation accrues when the

defamee discovers or reasonably should have discovered the publication of the

defamation.  Bauernfiend, 54 P.3d at 453.  There is no independent requirement

that the defamee know the exact identity of the defamer, nor has Plaintiff provided

any evidence suggesting that Defendant's identity was not discoverable with

reasonable due diligence.  Accordingly, the Court finds that Plaintiff's defamation

claim as to the August 19, 2004 email accrued more than two years prior to the

filing of the instant action and, therefore, is barred by the statute of limitations.

While unclear, it appears that Plaintiff additionally contends that Defendant's July 20, 2005 declaration constituted republication of the defamatory material and, thus, tolled the statute of limitations. The Court does not address this issue because, for the reasons discussed in the next section, Plaintiff's defamation claim with respect to the July 20, 2005 declaration is alternatively barred by the absolute litigation privilege.

Based on the foregoing, the Court GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's defamation claim relating to the August 19, 2004 email.

B.  Absolute Litigation Privilege

Defendant asserts that Plaintiff's defamation claim as to the July 20, 2005 declaration is barred by the absolute litigation privilege. In opposition, Plaintiff argues that the absolute litigation privilege is inapplicable here because Defendant made false and defamatory statements about her visit to HMB and, further, that Defendant is not an attorney to whom the privilege applies.

Hawai`i courts apply an absolute litigation privilege in defamation actions for words and writings that are material and pertinent to judicial proceedings. Matsuura v. E.I. du Pont de Nemours and Co., 73 P.3d 687, 692

15

(Haw. 2003).[7]  The policy considerations underlying this privilege include: (1) promoting the candid, objective, and undistorted disclosure of evidence; (2) placing the burden of testing the evidence upon the litigants during trial; (3) avoiding the chilling effect resulting from the threat of subsequent litigation; (4) reinforcing the finality of judgments; (5) limiting collateral attacks upon judgments; (6) promoting zealous advocacy; (7) discouraging abusive litigation practices; and (8) encouraging settlement.  Id. at 693.

While Plaintiff is correct in pointing out that the cases relied upon by Matsuura addressed the application of the absolute litigation privilege to attorneys

---

[7] The Court also notes that, while Plaintiff's defamation claim is brought under State law, the U.S. Supreme Court has held that witnesses are absolutely immune from suits for damages under 42 U.S.C. § 1983 for testimony given at trial, or for testimony given during adversarial pretrial proceedings.  Briscoe v. Lahue, 460 U.S. 325, 345-46 (1983).  In the Ninth Circuit, the fact that testimony was presented to a court in the form of an affidavit, rather than by a witness actually present during the proceedings, does not affect the immunity to be accorded the witness.  Burns v. County of King, 883 F.2d 819, 822 (9th Cir. 1989).

In addition, while apparently not addressed by Hawai`i courts nor raised by Plaintiff here, courts in other jurisdictions have held that the absolute litigation privilege applies to every proceeding of a judicial nature before a court or official clothed with judicial or quasi judicial power.  See, e.g., Malmin v. Engler, 864 P.2d 179, 182 (Idaho App. 1993).  Furthermore, to be privileged, it is not essential that the language be spoken in open court or contained in a pleading, brief, or affidavit.  Id.; see also Craig v. Stafford Const., Inc., 856 A.2d 372 (Conn. 2004) ("[A]n absolute privilege also attaches to relevant statements made during administrative proceedings which are quasi-judicial in nature[.]" (internal quotations and citation omitted)).

specifically, <u>Matsuura</u> makes no such distinction.  In fact, <u>Matsuura</u> dealt with the

liability of a "party," not an attorney, and held, <u>inter</u> <u>alia</u>, that a party is not

immune from liability for civil damages based on that party's fraud engaged in

during prior litigation proceedings.  <u>Id.</u> at 706.  Plaintiff apparently relies on this

language to argue that Defendant is precluded from obtaining the protections of the

privilege because his words here were allegedly fraudulent.  As the Court noted at

the hearing, such an extension of <u>Matsuura's</u> holding would cause the exception to

the absolute litigation privilege to swallow the rule in that the privilege could never

be invoked in a defamation proceeding so long as the other party could circumvent

it merely by claiming that the disputed words were fraudulently uttered.  The plain

language and underlying policy considerations of <u>Matsuura</u> and the absolute

litigation privilege preclude such a result.

Furthermore, <u>Matsuura</u> is factually distinguishable from the matter at

hand.  The <u>Matsuura</u> plaintiffs alleged that the defendant chemical company had

misrepresented critical test results, withheld evidence, and withheld field test

results in a previous lawsuit in a different jurisdiction involving the same

allegations.  <u>Id.</u> at 689.  In a subsequent lawsuit in Hawai`i State court, Plaintiffs

relied on these same test results and obtained $10 million in compensatory

damages, $14 million in punitive damages.  <u>Id.</u>  The Hawai`i court also imposed

over $1.5 million in sanctions against the defendants.  Id.  Upon certification from

this Court, the Hawai`i Supreme Court held that the absolute litigation privilege

did not protect such fraudulent conduct.  Id. at 706.

Here, there was no prior litigation and no evidence that Defendant

engaged in fraudulent conduct, let alone conduct on a level of egregiousness

similar to the defendants in Matsuura.  Defendant was issued a subpoena to testify

at the August 4, 2005 hearing on Plaintiff's appeal.  (Ogawa Subpoena, Ex. J,

attached to Def.'s MSJ.)  In denying Plaintiff's request to quash the subpoena, the

Board stated that "it is clear . . . that the testimony of [Defendant] at the scheduled

hearing is relevant to one of the charges[.]"  (Order and Summary of Conference

Call, Ex. K at 2, attached to Def.'s MSJ.)  Plaintiff's subsequent withdrawal of her

request for a hearing meant that the administrative judge had no option but to rely

on a written record when deciding Plaintiff's appeal.[8]  In support of its position as

to Plaintiff's termination, the Agency submitted Defendant's July 20, 2005

declaration, which was clearly material and pertinent to the underlying quasi

---

[8] By withdrawing her request for a hearing, Plaintiff also bypassed an
opportunity to cross-examine Defendant about the alleged defamatory statements
contained in the July 20, 2005 declaration.

18

judicial proceeding before the Board because Defendant's testimony was related to one of the grounds for removing Plaintiff from federal employment.

Based on this record, there is no question that Defendant's submission of his July 20, 2005 declaration was exactly the kind of action to which the absolute litigation privilege was intended to apply.  Accordingly, the Court finds that the absolute litigation privilege bars Plaintiff's defamation claim as to the July 20, 2005 declaration and GRANTS Defendant's Motion for Summary Judgment as to this issue.

C.  Punitive Damages

Defendant asserts that Plaintiff has no claim for punitive damages because she cannot establish that he acted wantonly, oppressively, or maliciously.  The Court agrees.

In Hawai`i, punitive damages may be awarded only upon a showing that a defendant acted wantonly, oppressively, or maliciously.  Quedding v. Arisumi Bros., Inc., 661 P.2d 706, 710 (Haw. 1983).  There is no such evidence here.  Defendant's initial interaction with Plaintiff was as a result of Plaintiff's refusal to follow HMB's security policies and Plaintiff has provided no evidence that Defendant behaved inappropriately during this incident.  Moreover,

19

Defendant's August 19, 2004 email was written at the behest of Enos and merely recounted the events that transpired at HMB from the perspective of Defendant. Finally, Defendant's July 20, 2005 declaration was provided as part of a quasi judicial proceeding and, again, evinces only Defendant's characterization of the events at HMB.  There is simply no evidence suggesting that Defendant acted with malice or in any way inappropriately in communicating his impressions regarding the incident at HMB.  Accordingly, Plaintiff's claim for punitive damages fails as a matter of law.

As such, the Court GRANTS Defendant's Motion for Summary Judgment as to Plaintiff's claim for punitive damages.

II.  Plaintiff's Motion for Continuance

In light of this Court's determination that Defendant is entitled to summary judgment for the reasons discussed above, Plaintiff's Motion for Continuance is hereby DENIED AS MOOT.  Furthermore, the Court notes that its review of the motions to compel indicates that, regardless of this determination, none of the issues raised in these motions would have had any substantive bearing on the issues before the Court here.

<u>CONCLUSION</u>

For the reasons stated above, the Court GRANTS Defendants' Motion for Summary Judgment and DENIES AS MOOT Plaintiff's Motion for Continuance.

Judgment shall be issued accordingly.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, September 3, 2008.



_____
David Alan Ezra
United States District Judge

<u>Roberts v. City and Count of Honolulu, et al.</u>, CV No. 07-00391 DAE-KSC; ORDER GRANTING DEFENDANT GARRETT Y. OGAWA'S MOTION FOR SUMMARY JUDGMENT; ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR A RULE 56(f) CONTINUANCE